**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRIE L. DONADIO, | No. 2:11-CV-1050-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

1

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 26, 2006.  In the application, plaintiff claims that disability began on February 15, 2003.  Plaintiff claims that disability is caused by a combination of: "fibromyalgia, carpal tunnel syndrome, tendinitis, depression, bipolar disorder, and panic attacks."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 17, 2008, before Administrative Law Judge ("ALJ") James P. Berry.   In a November 25, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment: chronic pain disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the residual functional capacity to perform light work except she is occasionally able to stoop, kneel, balance, crouch, and crawl, and she must avoid engaging in very detailed tasks; and

4. Considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 18, 2011, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion,

must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff raises one argument, as follows:

> In finding that the only limitation stemming from Ms. Donadio's mental impairment is a restriction to not very detailed tasks, the ALJ erroneously rejected or misstated the opinions of every treating and consultative physician, depriving the ultimate functional capacity finding of the support of substantial evidence.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

/ / /

/ / /

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff challenges the ALJ's analysis of the opinions of treating psychiatrists Drs. Castillo and Scaramozzino. Plaintiff also claims that the ALJ erred with respect to opinions as to plaintiff's Global Assessment of Functioning ("GAF") score.

/ / /

/ / /

/ / /

4

A. **Plaintiff's GAF Score**

As to plaintiff's GAF score, the ALJ stated:

As for the opinion evidence, an assessment dated June 30, 2006, reported that the claimant had a GAF of 35. (Exhibit 11F page 7). Isabel Manuel, M.D., reported on December 8, 2005, that the claimant on admission to the hospital after being off her medications for a month had a GAF of 40 indicating some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relation, judgment, thinking, or mood. When discharged, the claimant was found to have a GAF of 60 indicating mild to moderate symptoms or mild to moderate difficulty in social, occupation, or school functioning. (Exhibit 1F pages 16 and 27). Pursuant to 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p, the undersigned assigns little weight to these opinions, as they are not supported by the medical evidence of record that finds that the claimant has mild mental impairment symptoms.

Merced County Department of Mental Health progress notes reported on May 1, 2008, that the claimant had a GAF of 60. (Exhibit 14F page 9). Pursuant to 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p, the undersigned assigns significant weight to this opinion, as it is well-supported by the medical evidence finding that the claimant has mild mental impairment symptoms.

Plaintiff argues:

The ALJ also granted "little weight" to the GAF assessments of Ms. Donadio's treating psychiatrists, both those who treated here as an inpatient and as an outpatient (Tr. 14). Specifically, he acknowledged that psychiatrist Manuel assessed her GAF at 40 in intake evaluation of December 2005, which improved to a 60 by the time of discharge, and that in June of 2006, a staff psychologist in the outpatient setting assessed her GAF at 35 (Tr. 14). He dismissed the assessments with the simple rationale that they are allegedly "not supported by the medical evidence of record that finds that the claimant had mild mental impairment symptoms." (Tr. 14). The only "source" who found that Ms. Donadio has "mild mental impairment symptoms," however, is the ALJ himself. As he rightly pointed out, all treating mental health specialists assessed her GAF as low as 35, indicative of "serious" mental symptoms, and no higher than 60, indicative of "moderate" limitations in social and/or occupational function (citation omitted). Even the GAF of 60, the highest GAF reflected in the record, occurred only upon her discharge from an inpatient hospitalization, and therefore represented her status after having just been medically stabilized and confined, not a good indicator of her general level of functioning. The claim that those GAF assessments are "not supported by the medical evidence of record" is simply unfounded. Indeed, those GAF scores are accurate reflections of a woman continually struggling with persistent auditory hallucinations, some visual hallucinations, insomnia, and depressed or unstable moods secondary to

5

>Major Depressive Disorder with psychotic features, despite taking medications which her doctors conceded had been only moderately or "semi-effective" (Tr. 147, 414-26, 449-54).

As framed by plaintiff, the issue is whether the GAF scores reflect objective evidence of "serious" or "moderate" mental limitations, specifically, hallucinations, insomnia, and depressed mood. If other medical opinions based on objective evidence contradicts evidence of serious or moderate mental limitations, the ALJ does not err in resolving the conflict as long as the evidence is summarized and reasons for rejecting one opinion over another are given. Such is the case here. A review of the hearing decision reflects that the ALJ accepted the opinions of Dr. Scaramozzino on the issue of plaintiff's mental limitations. Despite noting a GAF score of 55, Dr. Scaramozzino opined that plaintiff has " a good to fair ability to understand and remember short, simple, and detailed instructions; maintain attention and concentration; sustain an ordinary routine; interact with co-workers; deal with changes in the work setting; and a fair ability to accept instructions from a supervisor and complete a normal workday/workweek." In light of Dr. Scaramozzino's opinion, which is based on objective clinical observations following an evaluation and which concluded that plaintiff's mental limitations did not significantly erode her functional capacity, the ALJ was entitled to reject those opinions stating that GAF scores between 35 and 60 indicate significant limitations.

**B.    Dr. Scaramozzino**

As to Dr. Scaramozzino, the ALJ stated:

>James Scaramozzino, Ph.D., reported on August 26, 2006, that the claimant was seen for a Social Security consultative psychiatric evaluation. The claimant complained of chronic pain, financial worries due to multiple medical problems, episodes of depression, sleep disturbance, mood swings, headaches, suicidal thoughts, and self isolation. She had a history of multiple bouts of psychological distress including anorexia and depression. She had been involved in illicit drug use in her mid-20's including methamphetamine and cocaine and a history of being admitted five times to a psyche unit since adolescence. She had been arrested several times and two months previously spent a few days in jail for trespassing. On examination, her intellectual functioning appeared average. The claimant was diagnosed with polysubstance dependence with early partial remission per claimant report with no data to support her

> assertions, borderline personality disorder, and a Global Assessment of Functioning ("GAF") of 55 indicating moderate symptoms of moderate difficulty in social, occupation, or school functioning. (Exhibit 3F).
>
> * * *
>
> . . . Dr. Scaramozzino reported on August 26, 2006, that the claimant stated that she is able to take care of her personal hygiene, help out with household chores and errands for friends she was living with, watch television, use a telephone, and enjoys reading. (Exhibit 3F page 4).
>
> * * *
>
> . . . Dr. Scaramozzino reported on August 26, 2006, that the claimant stated that she was living with friends, talks with friends and family on the telephone, and goes to church. (Exhibit 3F pages 2 and 4). . . .
>
> * * *
>
> . . . Dr. Scaramozzino reported on August 26, 2006, that the claimant had a GAF of 55 and had a good to fair ability to understand and remember short, simple, and detailed instructions; maintain attention and concentration; sustain an ordinary routine; interact with co-workers; deal with changes in the work setting; and a fair ability to accept instructions from a supervisor and complete a normal workday/workweek. (Exhibit 3F pages 4 and 6). Pursuant to 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p, the undersigned assigns significant weight to this opinion, as it is well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, the opinion is not inconsistent with other substantial evidence of record. In addition, the physician is an examining source who is familiar with Social Security Rules and Regulations and legal standards set forth herein and best able to provide a superior analysis of the claimant's impairments and resulting limitations.

Plaintiff argues that, rather than giving Dr. Scaramozzino's opinion "significant weight," the ALJ failed to include the doctor's assessed limitations in the residual functional capacity finding.

Following his evaluation, Dr. Scaramozzino diagnosed plaintiff with polysubstance dependence in early partial remission per plaintiff's report, and depressive disorder NOS. The doctor offered the following discussion:

> The claimant appeared to respond to questions in an open and honest

7

    manner. There did not appear to be any evidence of the claimant exaggerating symptoms, nor did there appear to be any inconsistencies throughout the evaluation.

    The claimant's symptom severity of depression and drug addiction is considered to be within the moderate range.

    The claimant is willing to receive treatment for this disorder and had demonstrated past compliance.

    The claimant's willingness to use available resources and her support system is good. The likelihood of the claimant's mental condition improving in the next 12 months is fair-to-poor. She appears to be in denial or minimizing her situation. It is not clear what level of acknowledgment and responsibility she is taking for her current situation.

    The claimant's attitude toward seeking employment is fair. She reports having had a positive work history, but due to her physical limitations now she reports that she does not anticipate being able to return to work.

Dr. Scaramozzino rendered the following opinions as to plaintiff's functional capacity:

    The claimant's ability to understand and remember very short and simple instructions is good-to-fair.

    The claimant's ability to understand and remember detailed instructions is good-to-fair.

    The claimant's ability to maintain concentration and attention is good-to-fair all the three above are influenced by her depressive symptoms.

    The claimant's ability to accept instructions from a supervisor and respond appropriately is fair.

    The claimant's ability to sustain an ordinary routine without special supervision is good-to-fair.

    The claimant's ability to complete a normal workday/workweek without interruptions at a constant pace is fair at this time, all three of which are influenced by her depressive symptoms and her personality disorder, characteristic of a borderline.

    The claimant's ability to interact with coworkers is good-to-fair, influenced by her borderline personality disorder.

    The claimant's ability to deal with various changes in the work setting is good-to-fair, influenced by her depressive symptoms.

    The likelihood of the claimant emotionally deteriorating in the work environment is minimal to fair at this time until she is able to establish herself in a sobriety program and deal with any alternatives to her

> borderline personality characteristics that limit her ability to function in everyday life.
>
> Based upon the mental status examination, there was no evidence the claimant was engaging in substance abuse at the time of the evaluation.

The court fails to see any limitation set forth by Dr. Scaramozzino which was rejected without discussion by the ALJ. According to plaintiff, "Dr. Scaramozzino's assessments are simply unreflected in the ALJ's recognition of the most minimal mental function limitation." The court does not agree because the limitations recognized by Dr. Scaramozzino are themselves minimal. In no category of occupational functioning did the doctor opine any moderate limitation. In fact, in every area of functioning, the doctor opined that plaintiff's abilities are good to fair. Such findings are consistent with the ALJ's conclusion that plaintiff's mental limitations are not significant.

### C. Dr. Castillo

As to Dr. Castillo, the ALJ stated:

> A Psychiatric/Psychological Impairment Questionnaire dated July 25, 2008, by Manolito V. Castillo, M.D., reported that the claimant had moderate limitations in all areas of mental functioning and was capable of moderate stress. (Exhibit 13F).
>
> \* \* \*
>
> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, where supported by objective medical evidence and consistent with otherwise substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p). However, the opinions of these doctors [including Dr. Castillo] . . . appear on a fill-in-the-blank form, with only marginal notes attached to them. The doctor failed to cite any medical testing results or objective observations to support his conclusions as to the claimant's residual functional capacity. Furthermore, the opinion of these doctors, who assessed the claimant with the residual functional capacity of less than sedentary work and moderate mental impairments are not afforded any significant weight as these opinions conflict with the substantial evidence of record documenting less severe limitations. (Social Security Ruling 96-6p). The doctors did not adequately consider the entire record, including the statements of collateral sources and the objective findings of other treating physicians. The objective evidence in the record does not support the level of severity that these doctors assign.

/ / /

Plaintiff argues:

> . . . In rejecting treating psychiatrist Castillo's questionnaire responses, the ALJ set forth two rationales, which are essentially identical: that his opinions allegedly "conflict with the substantial evidence of record, documenting less severe limitations," and that he "did not adequately consider the entire record, including the statements of collateral sources and the objective findings of other treating physicians." (Tr. 15). Neither rationale is at all "specific," as he [the ALJ] wholly failed to identify the other evidence of record with which Dr. Castillo's opinions allegedly conflict. . . .

In the July 2008 assessment, Dr. Castillo states that he first saw plaintiff in June 2008 and that he treats plaintiff "monthly." Thus, at the time of the assessment, plaintiff had been seen by Dr. Castillo once or twice. Dr. Castillo diagnosed bipolar disorder NOS and assessed plaintiff's prognosis as "fair." Without identifying any supporting objective test results, Dr. Castillo checked boxes on the assessment form indicating the following symptoms: sleep disturbance; mood disturbance; emotional lability; substance dependence; suicidal ideation; and manic syndrome. Based on this, Dr. Castillo opined that plaintiff was moderately limited in every category of functioning except plaintiff's ability to be aware of normal work hazards and to take appropriate precautions. Notably, when asked on the form to identify laboratory and diagnostic testing supporting the assessment, Dr. Castillo left the form blank. Given the doctor's failure to cite to clinical findings supporting the assessed limitations, the court finds that the ALJ properly rejected Dr. Castillo's opinions. See Meanel, 172 F.3d at 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion).

/ / /

/ / /

/ / /

/ / /

/ / /

1  / / /

2  / / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 17) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 25, 2012

                                                            **CRAIG M. KELLISON**
                                                            UNITED STATES MAGISTRATE JUDGE